[Civil No. 4409.   Filed December 1, 1941.]

[119 Pac. (2d) 230.]

LYNNE POWELL, Appellant, v. A. B. LANGFORD, Appellee.

Mr. T. G. McKesson, for Appellant.

Messrs. Sloan, Scott & Green, for Appellee.

LOCKWOOD, C. J.—This is an appeal from a verdict and judgment in favor of A. B. Langford, plaintiff, in an action for damages as the result of an automobile accident. The factual situation immediately before and at the time of the accident may be stated as follows:

On January 7, 1940, one John E. Powell was driving a Buick automobile on the main public highway be-

tween Tempe and Mesa, Arizona. He was very much under the influence of intoxicating liquor at the time, and had just forced several cars to leave the road in order to avoid colliding with him. At the same time plaintiff was driving a Dodge pickup automobile, in which he, his wife Jocosa, and his five year old son James, were riding. When the Dodge car reached a point approximately one-half mile east of the Lone Palm service station between Tempe and Mesa, and while it was moving east on the extreme southerly side of the four-lane highway between the two towns, the Buick car being driven by Powell on the north side of the road in a westerly direction suddenly swerved diagonally almost entirely across the highway, and struck the Dodge car head-on. Just before the time of the accident Powell was proceeding at a rate of from forty-five to seventy-five miles per hour, while the Langford car was being driven between twenty-five and thirty-five miles per hour. As a result of this collision, plaintiff, his wife and son all received serious injuries, his car was badly damaged, and Powell was killed.

The overwhelming weight of the evidence was to the effect that the proximate cause of the accident was the negligent act of Powell in swerving his car to the wrong side of the highway, and, indeed, this is not questioned by counsel for defendant.

The action was not brought against the estate of John E. Powell, but against Lynne Powell, his wife, the theory of thus bringing it being that Lynne Powell was the sole owner of the Buick automobile, and that she loaned it to her husband, John E. Powell, to drive when she well knew, and had known for years, that he was a habitual dipsomaniac and utterly unfitted to be entrusted with the use of so dangerous an instrumentality as an automobile at any time. The evidence offered on the trial showed clearly that John E. Powell had been for years, to the knowledge of his wife, de-

fendant herein, a habitual drunkard of the worst type, and that a number of times he had been involved in automobile accidents caused by reason of his drunkenness. Nor, indeed, was this fact seriously disputed by defendant, her principal defense on the merits of the case being that the Buick automobile was not, at the time of the accident, her separate property. She claimed that it was originally either the community property of herself and husband, they being residents of Arizona, or else, if they were residents of Illinois, it was their joint property, and that it later became the separate property of her husband by virtue of an agreement in contemplation of divorce, so that she was not liable for a personal judgment against her by reason of the ownership of the car.

It is admitted that the Buick automobile at all times was registered in the name of defendant, and not in the name of John E. Powell, or of defendant and John E. Powell together. It is further admitted that after the accident defendant claimed and sold the Buick as her own; that she did not have the estate of her husband administered, but gave a bill of sale of the automobile in her own name.

It is not disputed that the Buick was originally purchased and paid for by defendant's father-in-law in Chicago, Illinois. In the latter's deposition he stated, in substance, that he did so for the mutual benefit of his son and daughter-in-law, but that he placed the car in her name so that his son would not be able to dispose of it. The testimony of defendant confirmed that of her father-in-law in regard to why and how the purchase and gift was made. She also testified that in November, 1939, she and her husband had decided to separate and divide their property, which consisted of some household furniture in Tucson and the car, and that he was to take the car and she was to take the furniture, but no divorce proceedings had been

filed nor had any formal transfer of the property been completed at the time of his death.

There can be no question, legally speaking, that defendant had the right to pass the title of the car at any time from its first registration until she did actually dispose of it, without the consent or signature of her husband, and that it was placed in her name with the express purpose and intention of preventing his having anything to say about its disposal. On the other hand, we think a reasonable conclusion is that it was intended that he get the benefit of its use. We are satisfied the evidence is such that the jury could well have believed that defendant was the legal owner of the car in her own right, and the only interest which her husband had therein was that it was intended it should be used for his benefit as much as for hers, and if this were true it would not have been community property but the separate property of defendant. The situation, therefore, does not fall within the rule of *Donn* v. *Kunz*, 52 Ariz. 219, 79 Pac. (2d) 965.

Nor do we think it was unreasonable for the jury to assume, as it evidently did, that defendant and her husband, although they might have discussed the question of divorce, had never gotten to the point of actually making a property division so that the ownership of the automobile passed from her to him. There was evidence to support a finding that the Buick was her separate property.

The decided weight of authority is that where one who owns a dangerous instrumentality, such as an automobile, and loans it to another who, to the knowledge of the owner, is incompetent to drive such a vehicle, the owner is guilty of negligence if the driver negligently injures another. *Lutfy* v. *Lockhart,* 37 Ariz. 488, 295 Pac. 975; *Schneider* v. *McAleer,* 39 Ariz. 190, 4 Pac. (2d) 903. Nor does defendant deny this, and she also admits the law to be that if the owner of

a car loans it to one who at the time is known to be intoxicated, and as a result of such intoxication an accident occurs, the owner is negligent and jointly liable with the driver. She contends, however, that the knowledge of the intoxication of the driver must always exist as of the time of the accident, and that knowledge that the driver has become intoxicated at different times in the past is not sufficient. We think the rule thus stated by defendant is too narrow. If the driver of a car merely becomes intoxicated at long intervals, it might well be that notice of actual intoxication at the time the car was loaned would be required, but if the driver's habits in the use of intoxicating liquor are such as to make him a confirmed dipsomaniac, we think the rule is different, for it is well known that such a person may at any time become intoxicated, and thus incompetent to drive a car. If, therefore, the evidence reasonably showed that John E. Powell was a dipsomaniac to the knowledge of defendant, it would be negligence for her to let him drive her car at any time. There was sufficient evidence from which the jury might have found that John E. Powell was, to the knowledge of defendant, a dipsomaniac. We think on the whole case the jury was authorized to find, as it did, that the joint negligence of defendant and John E. Powell caused the accident of which plaintiff complained.

██ We consider next whether the case was properly submitted to the jury on the evidence and the instructions. Generally speaking, the objections to the admission of evidence go to the evidence which plaintiff offered in her efforts to show that defendant knew John E. Powell was at all times unfit to be entrusted with an automobile. It is true that plaintiff was permitted to go into minute detail as to the habits of John E. Powell for many years, and the knowledge of defendant thereof. We think, however, that this was

permissible. The rule is that when one entrusts an automobile to an incompetent driver it must appear that the owner knew of the incompetency, in order that he may be deemed guilty of negligence in making the loan.

It was plaintiff's contention that Powell's incompetency was continuous, on account of dipsomania, so that it was immaterial whether at the precise moment defendant loaned him her car he was, to her knowledge, drunk or sober. For this reason, it was not only permissible but necessary for plaintiff to prove a general and long continued course of dissipation on the part of John E. Powell which reached the stage of permanent dipsomania, so that defendant must be assumed to know that it was never safe to trust him alone with an automobile. We think, therefore, that it was proper to permit plaintiff to go to great length in proving the general habits of John E. Powell in regard to the use of liquor, and defendant's knowledge thereof. A few of the questions asked may have been technically objectionable, but the evidence on the issue of dipsomania is so overwhelming that the jury could not have been misled. There is no reversible error in the rulings on evidence.

■ Defendant asked that a large number of special interrogatories be submitted to the jury, which request was refused by the court. Sections 21–1007, 21–1008 and 21–1009, Arizona Code 1939, provide that special interrogatories may be submitted to the jury along with a general verdict. This, however, is entirely discretionary with the court, and no litigant may demand this as a matter of right.

■■ We have examined the instructions given by the trial court and are satisfied that they fairly, correctly and sufficiently stated the rules of law applicable to the controverted issues of the case. The instructions asked for by defendant, and refused by the trial

court, either were covered sufficiently by the instructions given, or else incorrectly stated the law either in whole or in part. It is not incumbent upon the trial court, in case an instruction is requested which is partly correct and partly incorrect, to separate the sheep from the goats. *Strickland* v. *State,* 37 Ariz. 368, 294 Pac. 617; *Rain* v. *State,* 15 Ariz. 125, 137 Pac. 550.

The last question for our consideration is whether the verdict was so excessive as to show passion and prejudice. The amount given plaintiff for his personal injuries was $5,600. Under all the evidence in the case, we cannot say that this amount was excessive.

The judgment is affirmed.

McALISTER and ROSS, JJ., concur.