[Civ. No. 14142. First Dist., Div. Two. Oct. 20, 1949.]

WILBUR G. FLECKNER et al., Appellants, v. EDWARD G. DIONNE, a Minor, etc., et al., Defendants; P. D. PANGRACS, Respondent.

Joseph A. Bonacina for Appellants.

Robert L. Lamb and Robert A. Haughwout for Respondent.

GOODELL, Acting P. J.—The demurrer of respondent Pangracs, sued as Richard Roe, was sustained with leave to amend. Plaintiffs declined to amend, and judgment was entered that plaintiffs take nothing as against Pangracs, from which this appeal was taken.

The complaint is in three counts. It alleges that the defendants so negligently operated their Ford sedan on El Camino Real as to cause it to collide with the automobile driven by Wilbur G. Fleckner. The first count is based on bodily injuries

sustained by the latter and the second on injuries to Mrs. Fleckner.

The third count is the one by which respondent Pangracs was brought into the case. It incorporates paragraph I of the first and second counts, which simply contains the usual allegations respecting fictitious defendants. It then alleges on information and belief that the five fictitious defendants owned, maintained, conducted and operated a tavern in Sunnyvale and that on the evening in question between 9 and 10 p. m. defendant Edward G. Dionne, a minor, was a patron of the tavern and purchased and was sold and given intoxicating liquors and was allowed to consume the same therein; that the fictitious defendants knew that he was a minor, and sold the intoxicating liquors to him while he was already under the severe influence of intoxicating liquors; that they knew also that he had upon or near the premises an automobile and would thereafter drive and propel it; that defendants and their servants, agents and employees knew and should have known and foreseen that the driving of the automobile by him in his then intoxicated condition could and would result in harm and damage to others upon the highway. That the sale and serving of intoxicating liquor to him, was and did constitute a negligent disregard of the rights of plaintiffs, to their damage.

It alleges that thereafter defendant Edward G. Dionne "did in the said intoxicated condition and under a severe influence of liquor drive upon the said highway, unlawfully, negligently and recklessly and that he did propel his automobile in such a manner so as to cause the same to collide violently with the automobile in which plaintiffs above named were riding, all to their injuries and damage as hereinabove set forth."

It alleges further, "That all the said damage was a proximate and direct result of the unlawfulness, negligence, recklessness of the defendants, John Doe, Jane Doe, Richard Roe, First Doe Company, a co-partnership and Second Doe Company, a corporation, as herein above set forth, which said negligence joined and co-operated with the unlawfulness, carelessness, negligence and recklessness of the defendant, Edward G. Dionne, and produced the injuries and damages hereinabove alleged."

In his demurrer to the third count respondent specifies that no cause of action is stated in that it is too remote and cannot be determined in what manner any actions of defendants were the proximate cause of the alleged injuries.

█ The question presented for decision sufficiently appears from the allegations of the third count and the ground of remoteness raised by the demurrer.

Appellants are not able to supply any authority in this state supporting their position. On the other hand whenever our courts have had occasion to say anything at all touching the question, the court's language has indicated a view such as that expressed in the decisions of other states where the question has arisen.

In *Lammers* v. *Pacific Electric Ry. Co.*, 186 Cal. 379 [199 P. 523], the court held that the expulsion of the plaintiff from the train was not the proximate cause of the injuries which he received some six hours later and three-quarters of a mile away. However, in that case the court did say:

"The only connection between the ejection and the injury would be the fact that if there had been no ejection there would have been no injury. The sale of the whisky to the plaintiff would come nearer being a proximate cause of the injury than the ejection from the railway train. The peril arising from the ejection ceased the moment the passenger left the position where he could be struck by defendant's trains, while the peril arising from the use of the intoxicating liquor continued in operation up to the time of the injury and contributed thereto, and yet *it has been uniformly held in the absence of statute to the contrary that the sale of intoxicating liquor is not the proximate cause of injuries subsequently received by the purchaser because of his intoxication.* (Joyce on Intoxicating Liquors, sec. 421; *Cruse* v. *Aden*, 127 Ill. 231, 234 [3 L.R.A. 327, 20 N.E. 73].)'' (Emphasis added.)

In *Hitson* v. *Dwyer*, 61 Cal.App.2d 803 [143 P.2d 952], plaintiff sued a tavern owner for injuries sustained while within the defendant's tavern, where he had been sold intoxicating liquor while obviously intoxicated. He alleged that he fell from a stool to the floor and was then dragged by the defendant and an employee. The court said, at page 809, ''. . . in the absence of a showing to the contrary, the proximate cause is not the wrongful sale of the liquor but the drinking of the liquor so purchased. (30 Am.Jur., sec. 611.) If our view be correct it becomes apparent that plaintiff has alleged both an actionable and nonactionable wrong, and the defendants' special demurrer was properly sustained.'' The nonactionable wrong was the sale of the liquor, while the actionable wrong was the dragging of plaintiff across the floor.

In neither of these two cases was the language which we have quoted necessary to the decision. However, what the court says in each of them is in accord with the holdings in other jurisdictions on the question, Whether or not the *sale* of the liquor is a proximate cause.

The opinion in the Lammers case qualifies its statement respecting "uniform" holding by saying "in the absence of statute to the contrary." In this connection many of the states have enacted civil damage acts which greatly extend and enlarge the liability of saloonkeepers and tavern owners. Such legislation is discussed in Joyce on Intoxicating Liquors, sections 420-497. Illinois, for instance, has had a dramshop act for many years, which repeatedly has come before its courts. A case involving that act was *Hyba* v. *C. A. Horneman, Inc.*, 302 Ill. App. 143 [23 N.E.2d 564], (cited in *Hitson* v. *Dwyer, supra*) where the court said: "The common law gave no remedy for the sale of liquor either on the theory that it was a direct wrong or on the ground that it was negligence, which would impose a legal liability on the seller for damages resulting from intoxication." Numerous cases say the same thing and it is needless to cite them.

California has no civil damage act.

In *Seibel* v. *Leach*, 233 Wis. 66 [288 N.W. 774], the action was for property damage and personal injuries. One of the defendants, Landerman, was a tavern owner who sold intoxicants to Leach. The latter while intoxicated drove his car into plaintiff's car. Landerman's demurrer to the complaint was sustained, and in affirming the judgment the court said: "The common law rule holds the man who drank the liquor liable and considers the act of selling it as too remote to be a proximate cause of an injury caused by the negligent act of the purchaser of the drink. The decision in *Demge* v. *Feierstein, supra*, [222 Wis. 199, 268 N.W. 210] sets forth the law controlling in the case at bar."

The facts of that case and of this are substantially the same.

*Seibel* v. *Leach* was, as this is, an action on behalf of a third person. *Demge* v. *Feierstein*, 222 Wis. 199 [268 N.W. 210], *supra*, was not such a case but was brought by a widow whose husband had been sold intoxicating liquor by the Feiersteins, tavern owners, after she had given them oral notice not to let her husband have any more liquor. After leaving the tavern he lost control of his car and was fatally injured. The general demurrers of the tavern owners (and their bondsman) were sustained, and in affirming the judgment the court said: "The

cases are overwhelmingly to the effect that there is no cause of action at common law against a vendor of liquor in favor of those injured by the intoxication of the vendee. Black, Law of Intoxicating Liquors, c. 13, sec. 281; *Buntin* v. *Hutton*, 206 Ill.App. 194; *Healey* v. *Cady*, 104 Vt. 463, 161 A. 151; *Coy* v. *Cutting*, 138 Kan. 109, 23 P.2d 458; *State* v. *Johnson*, 23 S.D. 293, 121 N.W. 785, 22 L.R.A. (N.S.) 1007; *Kraus* v. *Schroeder et al.*, 105 Neb. 809, 182 N.W. 364, 365.''

Appellants argue that the Alcoholic Beverage Control Act [Stats. 1935, p. 1123; 2 Deering's Gen. Laws, Act 3796] makes it unlawful to sell intoxicating liquor to a minor or to a person already intoxicated. It is alleged in appellants' complaint herein that defendant Dionne was both. In *Waller's Adm'r.* v. *Collinsworth* (1911), 144 Ky. 3 [137 S.W. 766, Ann.Cas. 1913A 510, 44 L.R.A.N.S. 299], the sale of liquor upon which the action was based was illegal because (a) made in local option territory (b) to a minor. The action was brought by the administrator of a decedent who had been shot by a companion after both men had become intoxicated in Collinsworth's store on liquor which he had sold them. The constitutional and statutory provisions under which the action was prosecuted fixed liability only if the wrongful act was the proximate cause of the injury or death. The court held that the illegal sale of the liquor was not the proximate cause of Waller's death.

Further, on the question of the illegality of the sale, appellants rely on *Dunlap* v. *Wagner*, 85 Ind. 529 [44 Am.Rep. 42], which was likewise relied on in *Seibel* v. *Leach, supra.* In distinguishing it, the court in the latter case said (288 N.W. 774-5): ''Our attention is called to many cases in jurisdictions where statutes have been enacted making provision for such liability where one has become intoxicated by illegal sale of liquor. The case of *Dunlap* v. *Wagner* . . . is illustrative of the basis of appellant's contention. There a liquor dealer, unlicensed to sell liquor at retail, sold to a customer who consumed the liquor on the premises and became helpless. Because he was too helpless to drive the team which became frightened, a runaway occurred, and a horse he had borrowed was killed. The liquor seller was held liable for the value of that horse. In its decision the supreme court of Indiana did say that a dealer under such circumstances 'may well be deemed guilty of an actionable wrong independently of any statute.' However, this statement is immediately followed by the ruling 'but we have a statute which provides that every

person shall have a right of action for an injury resulting to person or property against one who shall, by selling intoxicating liquors to another, have caused the intoxication of the person by, or through whom, the injury is done.' The inapplicability of cases of that character to the facts here presented readily appears because we have no similar statute, and because 'in view of the common-law rule, it has been necessary, where opinion favored the creation of such a cause of action, to enact civil damage laws.' "

In *Tarwater* v. *Atlantic Co., Inc.* (1940), 176 Tenn. 510 [144 S.W.2d 746] plaintiff was an employee of a contractor engaged in painting defendant's property. Defendant distributed a large quantity of free beer to the contractor's employees on the job, who became "highly intoxicated." One of plaintiff's fellow employees while intoxicated dropped a large plank on him, injuring him, and he sued the owner who had donated the beer.

The question whether the furnishing of the free beer was the proximate cause of plaintiff's injuries was raised by demurrer, and the court in affirming the judgment for defendant said: "The defendant's act in furnishing the beer created a situation which afforded an opportunity to plaintiff's fellow employee to intoxicate himself voluntarily, and the voluntary act of the fellow employee was the proximate cause of the injury."

In the absence of civil damage legislation in this state, and with such views as have been expressed by our courts on the subject (Lammers and Hitson cases, *supra*) coinciding with the holdings in other jurisdictions where the questions have been directly passed upon, we are satisfied that the sustaining of the demurrer of respondent Pangracs was correct.

The judgment is affirmed.

Runnells, J. pro tem., concurred.

DOOLING, J.—I dissent. I frankly admit that the cases from other judisdictions are all to the effect that in the absence of statute no remedy exists against the dispenser of liquor for injuries resulting to third persons from the acts of intoxicated persons. However, considered as questions of the law of negligence and proximate cause, I cannot bow to the reasoning of those decisions when carried to the full extreme of holding that under no circumstances can one who dispenses liquor to another knowing that he is becoming intoxi-

cated be liable to a third person later injured by the intoxicated person's conduct; and I can see no reason for perpetuating in the law of this state the error of the courts of other jurisdictions.

Negligence is measured by what a person of ordinary prudence would or would not do under the same or similar circumstances and it is thoroughly settled that negligence may be the proximate cause of an injury to another even though the act of a third person intervenes, if a person of ordinary prudence could reasonably anticipate the probability of the third person's intervening conduct. (*McEvoy* v. *American Pool Corp.*, 32 Cal.2d 295, 299 et seq. [195 P.2d 783] ; *Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213, 218 et seq. [157 P.2d 372, 158 A.L.R. 872] ; *Katz* v. *Helbing*, 215 Cal. 449 [10 P.2d 1001].)

The complaint in this action alleges in effect that the defendant Pangracs (sued as Richard Roe) sold to the defendant Edward G. Dionne, a minor, intoxicating liquor knowing that he was already intoxicated, knowing that he had an automobile on or near the premises and knowing that he would thereafter drive the automobile. It is further alleged that defendant Pangracs knew or should have known that the driving of the automobile by Dionne in an intoxicated condition could and would result in damage to others on the highway, that the injuries to plaintiffs resulted from a collision with the car driven by Dionne while in an intoxicated condition and that the damage to plaintiffs was a proximate result of Pangracs' negligence in selling the liquor to Dionne.

Despite the unanimity of decision in other jurisdictions to the contrary these allegations in my opinion are sufficient to state a cause of action. We have conduct alleged on the part of the defendant Pangracs which would increase the intoxication of Dionne and the allegations that Pangracs knew that Dionne would drive his automobile when he left the premises and knew or should have known that his driving in an intoxicated condition would imperil the safety of others on the highway. This is sufficient to establish negligence in the sale of the liquor. We have the further allegations that the foreseeable happened and plaintiffs were injured by Dionne driving his automobile while intoxicated. Under the cases above cited this establishes proximate cause.

The cases are legion that the owner of an automobile entrusting it to an intoxicated driver or to one known to be addicted to intoxication may be liable for damages resulting to third persons from the intoxicated person's driving. (*Knight* v.

*Gosselin,* 124 Cal.App. 290, 294 [12 P.2d 454]; *Department of Water & Power* v. *Anderson,* 95 F.2d 577; *R. J. Reynolds Tobacco Co.* v. *Newby,* 153 F.2d 819; *Tolbert* v. *Jackson,* 99 F.2d 513; *Powell* v. *Langford,* 58 Ariz. 281 [119 P.2d 230]; *Mitchell* v. *Churches,* 119 Wash., 547 [206 P. 6, 36 A.L.R. 1132]; *Krausnick* v. *Haegg Roofing Co.,* 236 Iowa 985 [20 N.W. 2d 432, 163 A.L.R. 1413]; *Chaney* v. *Duncan,* 194 Ark. 1076 [110 S.W.2d 21]; *V. L. Nicholson Const. Co.* v. *Lane,* 177 Tenn. 440 [150 S.W.2d 1069]; *Levy* v. *McMullen,* 169 Miss. 659 [152 So. 899]; *Crowell* v. *Duncan,* 145 Va. 489 [134 S.E. 576, 50 A.L.R. 1425]; *Brady* v. *B. & B. Ice Co.,* 242 Ky. 138 [45 S.W.2d 1051]; *Worsham-Buick Co.* v. *Isaacs,* (Tex.Civ.App.) 56 S.W.2d 288; *Baader* v. *Driverless Cars,* 10 La.App. 310 [120 So. 515]; *Crisp* v. *Wright,* 56 Ga.App. 338 [192 S.E. 390]; *Owensboro Undertaking & Livery Assn.* v. *Henderson,* 273 Ky. 112 [115 S.W.2d 563].)

I confess to an inability to distinguish these cases in principle from the case before us. If it is negligence to entrust an automobile to an intoxicated person or one addicted to intoxication why is it not negligence to furnish liquor to a person to the point of intoxication knowing that he is going to drive an automobile while in that condition? The reasoning of the cases that it is the drinking of the liquor and not the selling of it which causes the injury does not impress me. As well say in the cases last cited that it is the driving of the automobile which causes the injury and not the entrusting it to the intoxicated person. In either case if his intervening act is reasonably foreseeable the chain of causation is not broken by the act of the person intoxicated.

*Hitson* v. *Dwyer,* 61 Cal.App.2d 803 [143 P.2d 952] is distinguishable. There the drunken man sued for injuries to himself. Under settled rules of contributory fault I concede that he could not recover.

I would reverse the judgment.

A petition for a rehearing was denied November 19, 1949, and appellants' petition for a hearing by the Supreme Court was denied December 15, 1949. Carter, J., voted for a hearing.