[Civ. No. 56078. Second Dist., Div. Four. Nov. 5, 1979.]

In re the Marriage of JEANNE D. and DAVID S. WINN.
JEANNE D. WINN, Respondent, v.
DAVID S. WINN, Appellant.

**COUNSEL**

Frederick E. Chol for Appellant.

M. S. Rose for Respondent.

OPINION

**KINGSLEY, J.**—On this appeal, the husband attacks two portions of the interlocutory decree of dissolution: (1) relating to the division of community property; and (2) the provision for spousal support. We affirm both provisions.

I

The husband, for many years before marriage had been in the horse slaughter and horse auction business. The marriage took place on March 8, 1971. In the fall of 1975 he declared bankruptcy, but thereafter resumed the same business. ■ The trial court found that the business was of the value of $15,000, all community. It gave the business to the husband, requiring him to give to the wife a note for $7,500. He objects to that provision on the unique theory that the trial court lacked power to require a husband, without his consent, to be the purchaser of his wife's community property.[1] We reject that contention.

(1)  In finding that the business and its good will was community property, the trial court acted properly. It was entitled to determine that the value of the business in 1975, when bankruptcy occurred, was zero and that any present value was solely due to the husband's efforts in reestablishing it after the bankruptcy.

(2)  Although at one point in his brief the husband accepts as binding the $15,000 valuation placed on the business by the trial court,[2] he still contends that, rather than force him to purchase it at one-half of that value, it should have been sold—although admittedly any sale would have been for zero—and the nonexistent price been divided equally.

The husband's theory is that subdivision (a) of section 4800 of the Civil Code calls for an equal division of community property and that

---

[1] The husband does not here object to the interest rate or other terms of the note.

[2] "Respondent is aware of the rule of law that when opposing inferences may reasonably be drawn from the facts, the findings of the trial court will not be disturbed on appeal. (*McIntyre* v. *Doe & Roe* (1954) 125 Cal.App.2d 285, 270 P.2d 21.) Therefore, respondent may be forced to accept $15,000 as being the fair market value of the businesses, even though they could not be sold at that price."

case law requires, in the usual case, a division in kind.[3] However, paragraph (1) of subdivision (b) of that section provides: "Where economic circumstances warrant, the court may award any asset to one party on such conditions as it deems proper to effect a substantially equal division of the property." Under that provision, trial courts have, as the husband admits, in many cases allotted the family business to the husband, requiring him to compensate the wife for her share in the community good will. The husband argues, correctly, that those cases were ones in which the "buyer" spouse wanted to keep the business for himself whereas here, he now claims he does not want to *buy* it.[4] We regard that distinction as, on the facts of this case, immaterial.

The problem of evaluation and disposition of a family business varies depending on whether the business is a going commercial enterprise, with a good will attached to the enterprise itself, independent of the personality of its principal owner, or whether it is one where the good will is almost entirely dependent on the personality and publicly recognized expertise of its principal owner. As was said in *In re Marriage of Foster* (1974) 42 Cal.App.3d 577, at page 584 [117 Cal.Rptr.49]: "The value of community goodwill is not necessarily the specified amount of money that a willing buyer would pay for such goodwill. In view of exigencies that are ordinarily attendant a marriage dissolution the amount obtainable in the marketplace might well be less than the true value of the goodwill. Community goodwill is a portion of the community value of the professional practice as a going concern on the date of the dissolution of the marriage. As observed in *Golden,* '. . . in a matrimonial matter, the practice of the sole practitioner husband will continue, with the same intangible value as it had during the marriage. Under the principles of community property law, the wife, by virtue of her position of wife, made to that value the same contribution as does a wife to any of the husband's earnings and accumulations during marriage. She is as much entitled to be recompensed for that contribution as if it were represented by the increased value of stock in a family business.' (270 Cal.App.2d 401, 405.)"

---

[3] Citing *In re Marriage of Brigden* (1978) 80 Cal.App.3d 380 [145 Cal.Rptr. 716].

[4] We note that, in his "Response" filed in the action, the husband had claimed that the business was his separate property and asked that it be "confirmed" to him. We read that as indicating a desire and intent on the part of the husband to continue to operate the business for himself.

In a recent article discussing the problems with which we are here faced,[5] it was said, as to valuation of a professional practice: "One way to establish the market value is by reference to comparable sales of other practices. Of course, this method is not available if the practice is not customarily sold, such as a law practice. This method has been criticized by the courts because a sale of goodwill to a third party is inherently different from a 'sale' in a divorce proceeding. A buyer of a professional practice has no assurance that the seller's clients would continue their patronage of the practice and so he is not willing to pay to the seller a sum which represents the true value of the seller's goodwill. A sale of goodwill in a divorce proceeding, however, involves a conveyance of goodwill from the silent partner to the professional. The latter 'sale,' then, has no impact upon the earning potential of the practice and does not affect the value of the goodwill to the professional."

Although we are concerned with a business not technically "professional," as is a law or medical practice, we conclude that the same considerations apply. As we have pointed out above, the husband here intends to continue in his old business, continuing to attract the customers his reputation in that business has already attracted. Even though the business has no salable value to another, it still has a goodwill value to him. It is as much a proper exercise of the trial court's power under subdivision (b) of section 4800 to compel him to pay for what he retains as it is in the law and medical practice cases.

## II

Although the husband contends that he is losing money in operating the business, his own financial showing was a profit of at least $17,000, and a gross income in the year prior to separation of $572,667. The wife, although earlier employed as a beauty operator was unemployed at the time of trial and her evidence showed that she had been unsuccessful in securing employment. The award was $500 per month for 42 months, then to terminate.[6] We cannot say that that award was excessive.

---

[5]Kennedy & Thomas, Putting a value on Education and Professional Goodwill (1979) 2 Fam. Advocate, pages 3, 4.

[6]The wife does not here object to the automatic termination.

The judgment is affirmed.

Alarcon, J., concurred.

**FILES, P. J.**—I concur in the judgment. The trial court's finding that the husband's business was worth $15,000 is supported by a balance sheet prepared by husband's accountant as of October 31, 1977, showing a net worth of $11,896.12 to which should be added $3,000 cash which had been deposited as a condition of doing business. The assets supporting this net worth were made up of accounts receivable, inventory, prepaid expenses and yard equipment.

The discussion of good will in the majority opinion has nothing to do with this case. The trial court made no finding expressly or by implication that the community property included any good will. The subject was not briefed. Worse yet, the comments of my colleagues on this unbriefed subject misstate the law.

Appellant's petition for a hearing by the Supreme Court was denied January 3, 1980.